IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MOHAMMAD ALI, as Trustee for the
Pete's Mountain Life Insurance Trust,

       Plaintiff,

                         3:10-cv-00943-PK

                         OPINION AND ORDER

v.

MIDLAND NATIONAL LIFE
INSURANCE COMPANY, an Iowa
corporation

       Defendant.

_____

PAPAK, Judge:


      Plaintiff Mohammad Ali, trustee for Pete's Mountain Life Insurance Trust (PMLIT),

brings this suit for breach of contract and declaratory relief arising out of Defendant Midland

National Life Insurance Co.'s ("Midland") allegedly improper cancellation of the PMLIT's term

life insurance policy.  Now before the court is Midland's motion to compel (#38) production of

documents requested by Midland in third-party subpoenas.  Also before the court is Ali's related

motion to quash (#41) Midland's third-party subpoenas.  As described below, Midland's motion

Page 1 - OPINION AND ORDER

is granted and Ali's motion is denied.

## BACKGROUND

Sohail Masood established several trusts for the benefit of his sons, Kamran and Ryell Masood, for which Mohammed Ali serves as trustee. One of these was the PMLIT, the plaintiff in this litigation, which purchased the Midland policy at issue in 1999. Another was the Sohail Masood Life Insurance Trust (SMLIT), which purchased a second Midland term life insurance policy in 1999 that apparently lapsed in 2008 for non-payment of premiums. SMLIT also owns a Nationwide universal life insurance policy, which is still in force. Finally, Masood established the Ryell and Kamran Masood Trust (RKMT), which owns no insurance policies. The trusts established by Masood – at least PMLIT and SMLIT– apparently have accounts at US Bank and Bank of the West, which they use to pay premiums for the insurance policies they hold.

In this case, Ali alleges that Midland improperly breached its insurance contract by cancelling PMLIT's policy in February 2010 for non-payment of yearly premiums, because Midland improperly ignored Ali's change of address form and sent premium-due notices to an invalid address. As damages for this breach, Ali seeks the value of the policy at the time it was improperly cancelled, measured by present value of the death benefit, less the present value of any costs due through Masood's life expectancy, including premiums and fees to convert the policy to a whole life policy as permitted by the policy.

## LEGAL STANDARDS

The Federal Rules of Civil Procedure permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26 (b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to

lead to the discovery of admissible evidence." *Id.*

## DISCUSSION

### I.    US Bank and Bank of the West Subpoenas

Midland issued broad subpoenas to US Bank and Bank of the West seeking all documents of any kind relating to accounts of the three family trusts – PMLIT, SMLIT, and RKMT– as well as documents relating to accounts held by Masood himself, dating back to 2004.[1] Midland's justification for these records is twofold.

First, Midland seeks this discovery to determine whether PMLIT possessed adequate funds to pay the policy premium due by the end of December 2009. During oral argument, however, Midland admitted that Ali already produced bank statements showing that PMLIT had more than sufficient funds to cover the premium in December 2009. Thus, Midland's first justification is completely unpersuasive.

Second, Midland seeks discovery about the general financial health of PMLIT and the other family trusts going back to 2007 to support its theory that, because PMLIT will not be able to afford the increased costs to convert its Midland term policy to a whole life policy in 2019, PMLIT cannot receive damages based on a measure that assumes such a conversion would take place. Although Midland generally opposes Ali's theory of damages, it requests this large swath of financial data to rebut Ali's damages claims, if the court ultimately entertains them. Accordingly, I requested the parties submit supplemental briefing with authority supporting their respective damages theories, in the hopes that I could fashion a preliminary ruling delineating the scope of damages and guiding the discovery process. Upon further consideration, I conclude that

---

[1] The subpoena was later revised to request documents going back only to 2007.

Page 3 - OPINION AND ORDER

it is premature to rule on the appropriate measure of damages; that is a question to be taken up by the judge who ultimately tries this case. Nevertheless, I conclude that Midland's requested discovery could arguably be relevant to the damages theory Ali now pursues, which is one variation on one of the potential theories of damages that the court may ultimately apply.

Although Oregon courts have clearly articulated the proper measure of relief for wrongful cancellation of an insurance contract in an action for restitution upon rescission of the contract, they have apparently not yet determined the proper measure of relief in an action for damages upon breach of such a contract. *See Bollenback v. Continental Casualty Co.*, 243 Or. 498, 513-520, 414 P.2d 802 (1966) (*en banc*) (distinguishing these two types of actions and holding that in a suit to rescind a wrongfully cancelled health and accident insurance policy, the amount of past premiums paid less the value of the insurance actually received is the proper measure of relief). Nevertheless, in *Krebs v. Sec. Trust & Life Ins. Co.*, 156 F. 294 (C.C. Or. 1907), the Circuit Court[2] in the District of Oregon described two frequently used methods to calculate damages for breach of a life insurance contract. First, if a plaintiff can secure other insurance "of like nature and kind, his measure of damages is the difference between the cost of carrying the insurance which he has, for the term stipulated for, and the cost of new insurance at the rate he would then be required to pay for a like term." *Id.* at 297. But, if the plaintiff is now uninsurable, "then his measure of damages will be the present value of his policy as of the date of death, less the estimated cost of carrying the same, from the date of cancellation, at his then age." *Id.* Consistent with this second method, courts from other jurisdictions calculate the measure of damages for an uninsurable plaintiff as the face value of the cancelled policy less the premiums

---

[2] The old circuit courts were abolished in 1912.

which would accrue until the end of the plaintiff's life expectancy, although they disagree whether the face value, the premiums due, or both, should be reduced to their present value in the calculation. *See Remedies and Measure of Damages for Wrongful Cancellation of Life, Health, and Accident Insurance*, 34 A.L.R.3d 245 at §24[a]-[c].

Here, Ali embraces this later measure of damages and argues that calculating the cost of carrying the Midland policy until Mr. Masood's expected death includes assuming PMLIT would have converted the term life policy to a whole life policy before the term expired in the end of 2019. Ali contends that PMLIT need not prove it's actual ability to carry the policy until Mr. Masood's life expectancy because Midland's material breach discharged any further obligation of performance under the policy.[3] Midland claims that Ali's damages theory is inappropriate because the inherent assumption of conversion to a more expensive policy is unreasonably speculative. However, Midland contends that if the court entertains Ali's damages theory, Midland must have access to evidence concerning the complete financial picture of PMLIT, the other family trusts, and Mr. Masood's dealings with those trusts, to show that PMLIT will not have sufficient funds available to convert to a whole life policy in 2019 and sustain elevated premium payments until Mr. Masood's life expectancy.[4]

---

[3] The case Ali cites for this proposition, *Wasserburger v. American Scientific Chemical, Inc.*, 267 Or. 77, 514 P.2d 1097 (1973), merely articulates the basic contract law principle "that a breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty." *Id.* at 82. Thus, *Wasserburger* does not clarify the nature of the plaintiff's burden when proving damages for breach of an insurance contract.

[4] Midland reasons that since PMLIT and the other family trusts share the same trustee, trustor, and beneficiaries, it is reasonable to suspect that there may have been exchanges of assets between them and/or Mr. Masood, necessitating discovery of financial information from several entities.

Page 5 - OPINION AND ORDER

Courts generally do not require plaintiffs to prove their ability to pay theoretical future insurance policy premiums when calculating damages for breach of an insurance contract. *C.f. Krebs*, 156 F. at 297 (referring abstractly to "estimated cost" of carrying the policy until the plaintiff's death, suggesting that the plaintiff's ability to afford that cost is irrelevant). Nevertheless, I find no authority, and the parties cite none, addressing the type of insurance policy at issue here– a term life policy with an option to convert to an as-yet unchosen whole life policy. Indeed, conversion to a whole life policy would entail significant increases in future premiums, as Ali concedes. Thus, it appears that PMLIT's future financial ability to convert the term life policy to a whole life policy could arguably be relevant to the level of certainty with which Ali could demonstrate the trust's damages at trial, assuming the court measured damages by the present value of the insurance policy in the first place. *See Franklin v. N. Life Ins. Co.*, 4 Wash. 2d 541, 569, 104 P.2d 310, 323 (Wash. 1940) (*en banc*) (addressing measure of damages in action for wrongful cancellation of life insurance and recognizing that "where the fact that damage existed is established, and uncertainty exists only as to the extent of the damage, great liberality is allowed the court or a jury to determine the amount of the damage."). Accordingly, the financial data Midland seeks from US Bank and Bank of the West concerning PMLIT, the other trusts, and Masood is discoverable. In reaching this conclusion, I do not intend to bind the trial court to the application of any particular measure of damages in this case. The parties have expressly reserved their rights to litigate the appropriate damages measure by motion or during pre-trial proceedings and such clarification will certainly be necessary if this case reaches trial. It may also be appropriate, in light of the complexity of the damage issue, to consider bifurcating the liability and damage portions of any trial.

Page 6 - OPINION AND ORDER

## II.    Nationwide Subpoena

Midland also issued a subpoena to Nationwide Insurance seeking all documents and communications pertaining to SMLIT's whole life policy with Nationwide and any other policy insuring Masood's life, including the history and timing of premium payments and address changes, from 2007 to the present.  Midland expresses three rationales for this discovery.  First, Midland seeks information related to Ali's payments of Nationwide policy premiums, which were on the same schedule with Midland's premiums, to show that PMLIT lacked the funds in December 2009 to pay the premium.  As discussed above, this justification is invalid, since Midland admits that PMLIT possessed sufficient funds in December 2009 to cover the required premium.

Midland's second rationale concerns the issue of mailing address changes.  In deposition, Ali testified that he originally directed Nationwide billing notices to be sent to the same address where Midland notice were to be sent, and that he sent Nationwide a change of address letter at the same time he allegedly sent one to Midland.  Thus, Midland argued that it should have access to those correspondences with Nationwide, which would be probative of whether Ali indeed sent an address change letter to Midland.   Ali now declares that his testimony was incorrect and that the address used for Nationwide billings was the home address of Masood's associate, not the P.O. box used for Midland billings that ultimately was changed.  Thus, Ali argues, any Nationwide records would have no bearing on his communication of an address change with Midland.  Midland, however, should have the right to test this assertion, especially since it conflicts with Ali's deposition testimony.  Therefore, Midland is entitled to all records from Nationwide concerning billing addresses and any changes to those addresses.

Third, Midland argues that it is entitled to records from Nationwide concerning Ali's management of SMLIT's whole life policy and investment selections, since that information would be relevant to rebut PMLIT's purported intent and ability to convert to a fixed-premium whole life policy in 2019. For example, evidence that Ali selected a variable-premium whole life policy with aggressive investment options from Nationwide as trustee for SMLIT would undercut Ali's contention that when he purchased the PMLIT's Midland policy, he intended to convert to a fixed-premium whole life policy without an investment component in 2019. Again, although I cannot determine now the appropriate measure of damages, Midland's requested discovery is arguably relevant to assessing the degree of speculation inherent in one possible damages measure. Accordingly, the Midland's subpoena to Nationwide is appropriate.

## CONCLUSION

Midland's motion to compel (#38) production of documents requested by Midland in third-party subpoenas is granted and Ali's motion to quash (#41) Midland's third-party subpoenas is denied.

Dated this 10th day of January, 2012.

Honorable Paul Papak
United States Magistrate Judge